(No. 58037.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EDGAR HOPE, JR., Appellant.

*Opinion filed March 12, 1992.*

MILLER, C.J., concurring in part and dissenting in part.

Charles M. Schiedel, Deputy Defender, of Springfield, and Steven Clark, Assistant Defender, of Chicago, both of the Office of the State Appellate Defender, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, Renee G. Goldfarb and Guy L. Miller IV, Assistant State's Attorneys, of counsel, and Kurt Smitko and Roger Malavia, law students), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Defendant, Edgar Hope, Jr., was tried by a jury in the circuit court of Cook County and convicted of murder, attempted murder, and armed violence. (Ill. Rev.

Stat. 1981, ch. 38, pars. 8—4, 9—1(a)(1), 33A—2.) Following a sentencing hearing before the same jury, defendant was sentenced to death. Defendant took a direct appeal to this court. Ill. Const. 1970, art. VI, §4(b); Ill. Rev. Stat. 1981, ch. 38, par. 9—1(i); 107 Ill. 2d Rules 603, 606.

Subsequently, this court directed the trial court to conduct a hearing in accordance with *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, to determine whether the State had unconstitutionally discriminated on the basis of race when it exercised its peremptory challenges against members of the venire. Following the circuit court's evidentiary hearing and oral argument before this court on the *Batson* issue, this court affirmed defendant's convictions, rejecting the *Batson* argument. This court vacated the death sentence, however, finding that the testimony concerning the murder victim's survivors was irrelevant and inadmissible at the sentencing hearing under *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529. *People v. Hope* (1990), 137 Ill. 2d 430.

Defendant filed a petition for writ of *certiorari* in the United States Supreme Court on December 26, 1990. On June 10, 1991, the United States Supreme Court granted defendant's petition for *certiorari*, vacated the judgment of this court and remanded the cause for further consideration in light of *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859.

On September 26, 1991, the State filed a petition for rehearing, requesting that this court review and modify its opinion in this matter in light of the recent United States Supreme Court opinion in *Payne v. Tennessee* (1991), 501 U.S. ___, 115 L. Ed. 2d 720, 111 S. Ct. 2597, concerning victim impact testimony at capital sentencing proceedings. By this opinion we grant the petition for re-

hearing, without further briefing, and modify our previous opinion as described below without further briefs.

We confine our review here to the issues concerning the *Batson* proceedings and the admissibility of victim impact evidence at a capital sentencing hearing. With the exception of these two issues, the reasoning and determinations of this court's decision in *People v. Hope* (1990), 137 Ill. 2d 430 (*Hope II*) stand. To avoid confusion between the defendant's separate appeals, we note at this point that he was also convicted of the murder of another person at another place and another time. On appeal, we also reversed defendant's conviction in that case and remanded the cause for a new trial. *People v. Hope* (1986), 116 Ill. 2d 265 (*Hope I*).

## THE *BATSON* PROCEEDINGS

The details of the 1982 jury selection are adequately recounted in *Hope II*. We include only a brief recitation of the proceedings.

### *1982 Jury Selection*

During the selection of defendant's jury, six black venire members were called for *voir dire*. Of those six black venire members, one was excused for cause, and the State exercised peremptory challenges against the five others, effectively excluding all black venire members called. In total, the State exercised 11 peremptory challenges.

Defendant moved for a mistrial following the State's exercise of four peremptory challenges of black venire members. Defendant alleged systematic exclusion of black venire members and the trial court allowed the State to offer explanations *in camera* for its earlier peremptory challenges for the sake of the record. At the same time, the trial judge offered his observations about the challenged black members, stating, among other

things that "[a] couple of them were out and out bums, to say the least." He further stated his belief that the challenged black members would not be deemed suitable jurors by anybody's standards, but allowed the State to state its reasons for its challenges "for what it's worth." The State proffered its explanations for its challenges (*Hope II*, 137 Ill. 2d at 444-45) and the trial judge denied the motion for mistrial.

After a fifth prospective black juror had been peremptorily excused, the defendant renewed his motion for mistrial. The prosecution offered its explanation for challenging Denise Wadley, and the trial court commented:

> "I cannot say they systematically excluded any black jurors, because I don't really feel, for one reason or another, that we really had substantial black jurors that, you know, that I would as a trial lawyer, accept as far as this case is concerned, and the one, basically young black juror basically about the same age as the defendant. I mean, with the exception of the one older lady, I don't know how old she was, and she had children the same age, and Louise Bartlett, but I agree with the State she wasn't the sharpest juror. I can't say they proved they systematically excluded them."

The trial court denied the motion for mistrial.

### 1987 Batson Hearing

In 1987, this court remanded the cause to the trial court for hearing pursuant to the 1986 *Batson* decision. At that time, defendant moved for ruling that a *prima facie* case under *Batson* existed. Under *Batson*, a defendant's *prima facie* case of purposeful racial discrimination in jury selection can be established by relying on the fact that the peremptory challenge system facilitates any intended discrimination and by showing that (1) the defendant belongs to "a racial group capable of

being singled out for differential treatment," *i.e.,* a "cognizable group"; (2) the State removed members of the defendant's race from the venire by using peremptory challenges; and (3) these facts "and any other relevant circumstances raise an inference" of purposeful discrimination because of race. *Batson,* 476 U.S. at 93-96, 90 L. Ed. 2d at 85-87, 106 S. Ct. at 1721-23.

Defendant offered in support of his motion a transcript of the 1982 *voir dire* process and copies of relevant juror information forms completed by venire members. The trial court then requested that the State supplement the record and the prosecution provided reasons for its peremptory challenges which are set out in *Hope II* (137 Ill. 2d at 447). Following the State's argument, defense counsel presented rebuttal, at which time the trial judge initiated the following dialogue:

"THE COURT: Let me ask you a question. The Supreme Court is going to have to answer for all of us. Merely because the victim is white and the defendant is black can you excuse him for that reason? Is that a valid peremptory challenge?

MR. ISAACSON [assistant public defender]: Because the defendant is black and the victim white?

THE COURT: Yes.

MR. ISAACSON: I think, it is absolutely clear you cannot.

THE COURT: I am not too sure. I ask it because I wish they would answer that question for me because I think that is the whole problem which is wrong with peremptory challenges. Proceed."

At the conclusion of argument, the trial judge concluded that he would not change his ruling at the time of jury selection that there was no appearance of racial discrimination in the State's use of peremptory challenges. The court also ruled specifically that defendant had not established a *prima facie* case of racial discrimination.

## Analysis of Hope II

In *Hope II*, this court outlined the *Batson* procedure in great detail. (137 Ill. 2d at 452-62.) *Batson* essentially provides for a three-step process for the evaluation of a claim that the prosecution has exercised its peremptory challenges in a violation of the equal protection clause. The defendant must first make a *prima facie* showing that the prosecution has exercised its peremptory challenges on the basis of race. If the requisite showing is made, the burden then shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson*, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 106 S. Ct. at 1723-24.

In *Hope II*, we determined that defendant made a *prima facie* case of purposeful discrimination under *Batson* and that the trial court's contrary finding was in error. (*Hope II*, 137 Ill. 2d at 466.) We maintain that analysis and conclusion. Next, the *Hope II* decision concluded that the trial court's finding of no purposeful discrimination cannot be said with confidence to be against the manifest weight of the evidence. (*Hope II*, 137 Ill. 2d at 472.) On remand, we reconsider and rule otherwise.

A factual finding at a *Batson* hearing is entitled to great deference on appeal and will be set aside only if clearly erroneous. (*Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 90 n.21, 106 S. Ct. at 1724 n.21; *Hernandez*, 500 U.S. at 365, 114 L. Ed. 2d at 409, 111 S. Ct. at 1869.) Such deference applies "in the absence of exceptional circumstances." (*Hernandez*, 500 U.S. at 366, 114 L. Ed. 2d at 410, 111 S. Ct. at 1870.) We find such exceptional circumstances to be present in the instant case.

In light of our previous determination that a *prima facie* case was shown by defendant, our further discus-

sion is limited to the explanations offered by the prosecution for its peremptory challenges. Those explanations, set out in *Hope II* (137 Ill. 2d at 444-47), were pretextual in nature. The prosecutors cited the backgrounds of some of the black venire members. They cited the age and job status of those members. They cited the members' experiences as crime victims. Examination of the record reveals, however, that young blacks were excused while young whites served. An unmarried black was excused while single whites served. An unemployed black was excused while an unemployed white served. Black crime victims were excused while similar whites served. This court has held prosecution explanations not credible where similar inconsistencies have been displayed. (*People v. McDonald* (1988), 125 Ill. 2d 182.) The prosecution's reasons are a collection of vague common characteristics and include repeated reliance upon the alleged demeanor of jurors or mistaken allegations about the jurors. Examined as a whole, they appear pretexts for racial discrimination.

## VICTIM IMPACT EVIDENCE

As stated above, we herein grant the State's petition for rehearing on the issue of victim impact evidence, as it is likely to arise on remand.

At the sentencing hearing, evidence in aggravation and mitigation was considered. In aggravation, the State presented evidence of defendant's extensive criminal background, including a murder conviction, his gang affiliation, and his misconduct in prison. In mitigation, defendant presented testimony of family members who spoke of defendant's difficult and impoverished childhood. Finally, in rebuttal, the State called Detective Patricia Hickey, who recounted the reaction of Officer Doyle's mother to her son's death and the effect that the crime had on her. Detective Hickey also testified to the

statements of Officer Doyle's sister regarding her mother's reaction to his death and the trial.

On direct appeal, defendant's death sentence was vacated. In vacating the sentence, this court relied upon *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, holding that:

> "such evidence is irrelevant to the unique setting of capital sentencing *** and that the admission of such evidence 'creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner.'" (*Hope II*, 137 Ill. 2d at 497, quoting *Booth*, 482 U.S. at 502-06, 96 L. Ed. 2d at 448-50, 107 S. Ct. at 2532-35.)

This was the correct determination at the time of the *Hope II* decision.

We note, however, the recent decision of the United States Supreme Court in *Payne v. Tennessee* (1991), 501 U.S. ___, 115 L. Ed. 2d 720, 111 S. Ct. 2597, which explicitly held that both *Booth* and the subsequent case of *South Carolina v. Gathers* (1989), 490 U.S. 805, 104 L. Ed. 2d 876, 109 S. Ct. 2207, were wrongly decided. In *Payne*, the United States Supreme Court held "that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar." *Payne*, 501 U.S. at ___, 115 L. Ed. 2d at 736, 111 S. Ct. at 2609.

The Illinois Bill of Rights for Victims and Witnesses of Violent Crimes Act (Ill. Rev. Stat. 1989, ch. 38, par. 1403 *et seq.*) provides for the right of victims of violent crimes, including the relatives of a deceased, to address the court regarding the impact of the criminal conduct upon their lives. The statute further dictates that a trial judge consider the victim impact statements, along with other appropriate factors, in determining the defendant's sentence. (Ill. Rev. Stat. 1989, ch. 38, par. 1406.) Ac-

cordingly, the victim impact evidence relating to the effects of this crime on Officer Doyle's mother is admissible in the penalty phase of a capital trial.

For the foregoing reasons, defendant's convictions are vacated, and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Judgment vacated;*
*cause remanded.*

CHIEF JUSTICE MILLER, concurring in part and dissenting in part:

The present matter is before us on remand from the United Sates Supreme Court for reconsideration in light of *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859. I disagree with the majority's conclusion that the defendant has established, under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the prosecution's purposeful discrimination against minority venire members during selection of the defendant's jury.

The majority opinion states, without explanation, that exceptional circumstances warrant the use in this case of a standard of review less deferential than the one that would normally govern our review. (147 Ill. 2d at 321.) The majority then compares the characteristics of black venire members whom the State peremptorily challenged with the characteristics of white venire members whom the State did not challenge. The majority summarily concludes that the prosecution's stated reasons for challenging the minority members were pretextual and that the prosecution intentionally excluded members of the venire from jury service because of racial considerations.

In the course of its discussion, the majority expressly reaffirms our earlier holding in *People v. Hope* (1990), 137 Ill. 2d 430, that the trial judge erred in failing to

find the existence of a *prima facie* case of discrimination under *Batson*. (147 Ill. 2d at 320.) That ruling would normally be deemed moot, however, for in this case the prosecution went on to offer race-neutral explanations for the exercise of its peremptory challenges and the trial judge ruled on the ultimate issue, whether the State intentionally discriminated against any member of the venire on the basis of race. In *Hernandez* the Court explained:

> "Once a prosecutor has offered· a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.

It is not clear from the majority opinion whether the court adopts a less deferential standard of review because of the trial judge's erroneous ruling on the defendant's *prima facie* showing, because of other comments made by the judge over the course of the *Batson* proceedings, or because of some other reason. In any event, even under the majority's standard of review, I would uphold the trial judge's ultimate determination.

A claim of purposeful discrimination under *Batson* is one purely of fact, and resolution of the issue will turn largely on an assessment of credibility. (*Hernandez*, 500 U.S. at 365, 114 L. Ed. 2d at 409, 111 S. Ct. at 1869.) In *Hope*, this court carefully examined the trial judge's comments at the hearings below and analyzed at length the sufficiency of the judge's findings with respect to the challenged members of the venire. (*Hope*, 137 Ill. 2d at 466-72.) The court then upheld the judge's determination that the prosecution had not intentionally discriminated against any prospective juror on the basis of race. For

the reasons described in our earlier opinion, I would reject the defendant's arguments here.

On the victim impact issue, I agree with the majority that the introduction of this evidence at the defendant's sentencing hearing was proper. I dissent, however, from the majority's holding that the defendant is entitled to a new trial and sentencing hearing because of *Batson* error.