[No. 12825-3-III.    Division Three.    February 1, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JORGE S.
SANCHEZ, *Appellant.*

822

*Linda Edmiston,* for appellant.

*Dennis DeFelice, Prosecuting Attorney,* and *Steve Cox, Deputy,* for respondent.

THOMPSON, C.J. — Jorge S. .Sanchez appeals his jury convictions for third degree assault of two police officers who attempted to arrest him on an outstanding warrant. He contends the prosecutor used his peremptory challenges in a discriminatory manner so as to exclude two Hispanics and one African-American from the jury panel. We affirm.

The relevant facts concern voir dire, the prosecutor's explanation of why he exercised his peremptory challenges, and the court's rulings rejecting defense counsel's objections that the challenges were racially discriminatory.

A

FACTS RELEVANT TO VENIREMAN RINALDO GARZA

The following colloquy took place between the prosecutor and Mr. Garza during voir dire:

Q: . . . Do you feel that part of a police officer's job is to, you know, get a little banged up every now and then and expect to take that and then if he does take that, that it shouldn't be a separate crime?

A: I believe it's his duty to keep the peace, but I don't know if he should necessarily have to get banged up everytime he's out there trying to take care of a problem.

Q: Okay. If somebody were to kick an officer or punch an officer when the officer was trying to arrest that person, do you feel that should be a crime?

A: I don't know.

Q: You're not sure?

A: Not just kick and punch.

Q: Not just kick and punch?

A: They probably take that all of the time.
Q: It may be part of the job?
A: Might be.

The prosecutor used a peremptory challenge to remove Mr. Garza from the jury. Defense counsel objected on the ground the challenge was based upon racial bias. The prosecutor responded that he exercised a peremptory because Mr. Garza had testified he thought getting kicked or punched was simply part of a policeman's job. The court ruled that the prosecutor's explanation provided a nondiscriminatory ground for his challenge.

## B

### MIGUEL MADRIGAL

The following colloquy took place between the prosecutor and Mr. Madrigal during voir dire:

A: . . . I'm not really crazy about attorneys.
Q: I think you'll probably fit right in.
A: 'Cause one — one time, I was a victim of an attorney.
Q: You were?
A: Yes.
. . . .
Q: Can you kind of give us an idea what happened?
A: . . . I hired [an attorney] for a personal case, I guess you can say bankruptcy, and I pay him the money and he never do nothing. And instead of using my money for whatever I pay him to do, he was using it for his personal use.
Q: That's too bad. Did you do anything about it?
A: Yeah; I got my money back, but it took me time.
Q: . . . Well, with that in mind, are you going to hold it against myself or Miss Edmiston?
A: Well, like I said —
Q: Go ahead.
A: I don't think so.
. . . .
Q: Okay. Will your opinion about attorneys influence how you look at this case at all?
A: Probably not.
Q: Okay. I notice that you're — there's a little hesitation there. Can you —
A: Well, I'm trying to make the right decision because like I told the judge earlier, my English is not — it's not too good. I'm trying to understand or get the right meaning of the definition of what you're saying.
. . . .

Q: . . . What language do you normally speak?
A: Spanish.

Q: . . . You won't have any problems understanding what witnesses are saying when they are speaking in English or maybe some phrases they might be using?
A: Probably yes because there's going to be some phrases that I never have heard before.

Again, the prosecutor used a peremptory challenge to remove Mr. Madrigal from the jury, and defense counsel objected on the basis of racial bias. As reasons for his challenge, the prosecutor cited Mr. Madrigal's distaste for attorneys and the fact that English was his second language. Again, the court ruled that the prosecutor's explanation provided valid, nondiscriminatory reasons supporting his challenge.

## C
### ROSE MARIE ALLEN

The following colloquy took place between the prosecutor and Mrs. Allen, who is a black woman, during voir dire:

Q: Do you know anybody that's had any bad experiences with police officers?
A: Yes.
Q: You do?
A: I don't necessarily know them personally, but I know of them.

Q: . . . Do you think that that will affect your decision here today?
A: . . . I think that's something I'd have to work with, you know, in my own mind.

Q: . . . What if you were in my shoes; you're the prosecutor. . . .
A: I would not want to be in your shoes at all. . . . I would not want your position nor the judge's position. . . .
Q: Why . . .
A: 'Cause prosecuting . . . that means you out to get somebody.
Q: . . . this case is about the defendant, who is accused of assaulting two police officers.
    . . . what do you think about that? Do you think that [police officers being assaulted is] part of the job?
A: You're saying this one person assaulted two police officers? I really have some problems with that.

A: I think that a person would have to be insane to jump two police officers.

Once again, the prosecutor used a peremptory challenge to remove Mrs. Allen from the jury, and defense counsel objected on the basis of racial bias. As reasons for his challenge, the prosecutor cited Mrs. Allen's suspicions about police officers and her disbelief that somebody could assault two officers. Again, the court ruled that the prosecutor's explanation provided valid, nondiscriminatory reasons supporting his challenge.

## ·D

### GENERAL LAW

The equal protection clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the jury solely by reason of their race. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), *modified in Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991). A defendant may raise this issue even if he is not the same race as the juror the prosecutor challenged. *Powers v. Ohio, supra*. In *Powers*, the defendant, a white man, objected to the State's use of peremptory challenges to remove seven black persons from the jury. *Powers*, at 403. The Court held the defendant had standing to raise the equal protection rights of a juror because

> [t]he overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause.

*Powers*, at 412.

The defendant has the burden of establishing a prima facie case of purposeful discrimination in the selection of the jury. *Batson*, 476 U.S. at 96. First, he must show the peremptory challenge was exercised against a member of a constitutionally cognizable racial group. *State v. Burch*, 65 Wn. App. 828, 840, 830 P.2d 357 (1992) (citing *Batson*). Second, the defendant must show that the use of the peremptory challenge and "other relevant circumstances" raise an inference of discrimination. *Burch*, at 840. Such circumstances may include a " 'pattern' of strikes against members of a constitu-

tionally cognizable group and the 'prosecutor's questions and statements during *voir dire* examination' ". *Burch*, at 840 (quoting *Batson*, 476 U.S. at 96-97).

If the defendant is able to establish the above, then the State must come forward with a neutral explanation for its use of the peremptory. *Batson*, 476 U.S. at 97. More than a general denial of discriminatory intent is required: "[t]he prosecutor . . . must articulate a neutral explanation related to the particular case to be tried." *Batson*, 476 U.S. at 98.

The trial court then has the duty to determine whether purposeful discrimination in fact occurred. *Batson*, 476 U.S. at 98. This determination "represents a finding of fact of the sort accorded great deference on appeal". *Hernandez v. New York*, 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859, 1868 (1991). The *Hernandez* Court reasoned:

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation . . . should be believed. . . . As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez*, 500 U.S. at 365 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 83 L. Ed. 2d 841, 105 S. Ct. 844, 854 (1985)).

E

APPLICATION

Here, Mr. Sanchez has established that the veniremen in question were members of a constitutionally cognizable racial group. But he has not established the second requisite for establishing a prima facie case. He has failed to raise any inference of discrimination based upon the use of the peremptory challenge or "other relevant circumstances". *Burch*, at 840. The State points out that one Hispanic juror was left on the jury.

Even if we held that Mr. Sanchez had met his initial burden, the State has rebutted his prima facie case by giving race-neutral reasons for exercising the challenges. In *Hernandez*, 500 U.S. at 359, the Court held that where the State had shown its peremptory challenges were exercised in a non-

discriminatory fashion, *there was no need to decide whether the defendant had established a prima facie case*:

> Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, *the preliminary issue of whether the defendant had made a prima facie showing becomes moot.*

(Italics ours.) *See also State v. Ashcraft*, 71 Wn. App. 444, 859 P.2d 60 (1993).

The prosecutor in this case offered race-neutral explanations for each of the three jurors challenged. Mr. Garza stated he believed that getting kicked or punched "might be" part of a policeman's job. As for Mr. Madrigal, the prosecutor cited his answers indicating (1) he did not trust attorneys, and (2) English was his second language.[1] Finally, the prosecutor relied on Mrs. Allen's admission that she did not trust police officers and would have a hard time believing that one man could assault two officers. The trial court, whose findings are accorded great deference on appeal, accepted the foregoing explanations as credible. *Hernandez*. We therefore reject Mr. Sanchez' contentions.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

---

[1] In *Hernandez*, the prosecutor cited the fact the potential juror was bilingual: "The prosecutor . . . offered a race-neutral basis for these peremptory strikes. As explained by the prosecutor, the challenges rested neither on the intention to exclude Latino or bilingual jurors, nor on stereotypical assumptions about Latinos or bilinguals. The prosecutor's articulated basis for these challenges divided potential jurors into two classes: those whose conduct during *voir dire* would persuade him they might have difficulty in accepting the translator's rendition of Spanish-language testimony and those potential jurors who gave no such reason for doubt. Each category would include both Latinos and non-Latinos. *While the prosecutor's criterion might well result in the disproportionate removal of prospective Latino jurors, that disproportionate impact does not turn the prosecutor's actions into a per se violation of the Equal Protection Clause.*" (Italics ours.) *Hernandez*, 500 U.S. at 361.