[No. 17868-4-III.   Division Three.   March 9, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES ADRIAN VREEN, *Appellant*.

*Paul J. Wasson II*, for appellant.

*Steven Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

KURTZ, C.J. — James Vreen was the driver of an automobile involved in a serious one-car accident. He was charged with three counts of vehicular homicide and one count of vehicular assault. At his trial, Mr. Vreen, an African-American, attempted to exercise a peremptory challenge to remove the only African-American in the jury pool. The court sustained the State's *Batson*[1] objection. The jury convicted Mr. Vreen on all four counts and he appeals contending: (1) the court erred by denying him his right to a peremptory challenge, (2) the prosecutor engaged in misconduct by eliciting testimony as to the credibility of a defense witness, and (3) the court erred in denying his motion for a new trial. The State cross-appeals contending the court erred in: (1) denying the State's motion to exclude evidence of Mr. Vreen's close personal relationship with the victims, (2) suppressing evidence of Mr. Vreen's prior state-

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

ments to reporters, and (3) suppressing evidence of a defense witness's prior statements to the police. We reverse and remand for a new trial.

## FACTS

Just after midnight on November 2, 1997, James Vreen drove a car full of teenagers toward People's Park on the Spokane River. Alicia Easterwood and Katherine Campbell were in the front seat with Mr. Vreen, and Wesley Forrester, Nate Haux and John Rohloff were in the backseat. The car went off the road at a sharp curve, hit a guardrail, then traveled about 130 feet down a steep embankment, striking two trees as it descended.

Just before the car struck the guardrail, Mr. Forrester looked at the speedometer. It indicated the car was traveling 60 miles per hour. Mr. Haux told a police officer he thought the car was traveling 40 to 50 miles an hour, and later testified the car was going, "[e]xtremely too fast for the road." The speed limit on the road is 25 miles per hour.

The two girls were thrown from the car and died instantly. Mr. Rohloff was trapped in the car and died a short time later. Mr. Forrester sustained a broken pelvic bone and a crushed hand and knee. Mr. Haux received only minor scratches. Mr. Vreen was seriously injured.

The State charged Mr. Vreen with three counts of vehicular homicide and one count of vehicular assault.

Eight days after the accident, a television reporter interviewed Mr. Vreen in jail. He told the reporter about the accident, stating that at the time of the accident, his cousin, Mr. Rohloff, had actually been the driver. He said he removed Mr. Rohloff to the back seat, so that no one would get into trouble for being the driver. This version of the accident was supported by Mr. Rohloff's mother, who stated that Mr. Vreen had told her that her son had been the driver.

Mr. Vreen's first trial ended in a mistrial.

Before the second trial, the State moved to exclude

testimony by Mr. Rohloff's mother describing the close relationship between the two cousins. The State argued that the evidence, ostensibly offered to rebut evidence of Mr. Vreen's mental state, was irrelevant. The State also asked the court to allow the jury to see a videotape of Mr. Vreen's television interview. The court allowed the defense to offer evidence of Mr. Vreen's relationship with his cousin and the two female victims "because it pertains to the mens rea required for the crime." The court further ruled that the State would not be permitted to use the videotape of the interview, or any statements arising from the interview, either in its case in chief or in rebuttal.

During voir dire, the defense attempted to use a peremptory challenge against Juror 55, the sole African-American member of the panel. The State objected, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The court sustained the objection.

The jury found Mr. Vreen guilty on all four charges. Before sentencing, the defense filed an extensive motion for a new trial which the court denied. Mr. Vreen appeals and the State cross-appeals.

## ANALYSIS

Is Mr. Vreen entitled to a new trial because the court erred by denying his peremptory challenge of an African-American juror?

Mr. Vreen argues he should have been permitted to use a peremptory challenge to remove Juror 55 from the jury panel. Juror 55 was a pastor, a retired military veteran, and the sole African-American on the panel. Mr. Vreen wanted to remove him because he believed his authoritarian background made it likely that the juror would favor the State. Mr. Vreen emphasizes that this explanation for challenging Juror 55 is not based on race but is in fact racially neutral. In response, the State does not contest that the court erred in sustaining the State's *Batson* objection. Rather, the State argues that even if Mr. Vreen

were erroneously denied the use of a peremptory challenge, the remedy is not reversal.

A defendant is guaranteed the right to a fair and impartial jury. U.S. CONST. amend. VI; CONST. art. I, § 21 and § 22 (amend. 10); *State v. Gentry*, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995); *State v. Rupe*, 108 Wn.2d 734, 748, 743 P.2d 210 (1987). To ensure this right, the defendant may excuse any prospective juror for cause. *State v. Brett*, 126 Wn.2d 136, 157-58, 892 P.2d 29 (1995); *see* RCW 4.44.150, .190; CrR 6.4(c). Additionally, a defendant may exercise a specified number of peremptory challenges against potential jurors without giving a reason. *State v. Briggs*, 55 Wn. App. 44, 51, 776 P.2d 1347 (1989); *see* RCW 4.44.140; CrR 6.4(e)(1).

However, the Equal Protection Clause limits the exercise of peremptory challenges by prohibiting their use to exclude otherwise qualified and unbiased jurors based upon their race. *State v. Luvene*, 127 Wn.2d 690, 699, 903 P.2d 960 (1995) (citing *Batson*, 476 U.S. at 89). Race-based peremptory challenges violate the right of defendants not to have members of their own race excluded from the jury based upon race, and the right of the excluded jurors not to be excluded from participating in civic life. *State v. Rhodes*, 82 Wn. App. 192, 195-96, 917 P.2d 149 (1996) (citing *State v. Burch*, 65 Wn. App. 828, 834, 830 P.2d 357 (1992)). A *Batson* objection requires that the challenging party first establish a prima facie case of purposeful discrimination. *Rhodes*, 82 Wn. App. at 196. Exclusion of a single juror does not generally establish a pattern, but the exclusion of the only eligible minority juror "may imply a discriminatory act or motive." *Id.* at 201.

We do not have the record of the voir dire, but after the jury was selected and before opening arguments, the defense asked the court to reconsider its ruling granting the State's *Batson* challenge to defense's peremptory strike of Juror 55. The State asked that the court either find that the attempt to strike Juror 55 was a racially-motivated act and that the reasons given by defense were pretextual, or

grant defense's motion and strike Juror 55. The court found that Juror 55 was the only African-American in the entire jury pool, so the defense was required to give a nondiscriminatory reason for challenging Juror 55. The court found that the defense's reason for the challenge, that the juror was a pastor and retired military man leading the defense to believe he would have an authoritarian mind-set and favor the prosecution, was insufficient to rebut the presumption of discrimination. The court believed that the juror's demeanor indicated he was not authoritarian, but a thoughtful and unbiased juror. The court refused to remove the juror from the panel.

■ Apparently, the court's only basis for finding a prima facie case of discrimination was that Juror 55 was the only African-American on the panel. Even when the challenged juror is the only African-American juror on the panel, the courts have been reluctant to find that exclusion of a single juror establishes a pattern or to find discriminatory motivation based on numbers alone. *Rhodes*, 82 Wn. App. at 201; *State v. Wright*, 78 Wn. App. 93, 102, 896 P.2d 713 (1995); *State v. Ashcraft*, 71 Wn. App. 444, 459, 859 P.2d 60 (1993). When a prima facie case exists, a party making the challenge must provide a race-neutral explanation for the challenge. *Rhodes*, 82 Wn. App. at 196. Here, even if the trial court's determination that the State made a prima facie showing of discrimination were correct, the defense provided a race-neutral explanation for the peremptory challenge. The court found this explanation to be insufficient to rebut the presumption of discrimination. We disagree. It is plausible that the defense would not want an ex-military man on the jury. The defense's motivation for the challenge was facially race-neutral and the State failed to show mere pretext. The court erred when it denied Mr. Vreen's peremptory challenge to Juror 55.

The next issue is whether reversal is required if the trial court erroneously denies a peremptory challenge to a juror. The State argues a new trial is required only if the defendant can show prejudice beyond the loss of the peremptory

challenge. There is no prejudice, the State maintains, if the defendant was tried by a fair and impartial jury. The State emphasizes that there is no constitutional right to peremptory challenges. *Batson*, 476 U.S. at 98; *State v. Persinger*, 62 Wn.2d 362, 365-66, 382 P.2d 497 (1963). Rather, these are "auxiliary" rights granted to defendants by statute or rule. *United States v. Martinez-Salazar*, ___ U.S. ___, 120 S. Ct. 774, 779, 145 L. Ed. 2d 792 (2000); *see State v. Rempel*, 53 Wn. App. 799, 804, 770 P.2d 1058 (1989), *rev'd on other grounds*, 114 Wn.2d 77, 785 P.2d 1134 (1990); 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE § 206, at 415 (5th ed. 1996).

Although the denial of a peremptory challenge may not be an issue of constitutional dimension, it is, nevertheless, an important right. It has been said that the peremptory challenge

> "occupies 'an important position in our trial procedures,' *Batson*, 476 U.S. at 98 [106 S. Ct. at 1724], and has indeed been considered 'a necessary part of trial by jury,' *Swain v. Alabama*, 380 U.S. [202,] 219 [, 85 S. Ct. 824,] 835[, 13 L. Ed. 2d 759 (1965)]. Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of 'eliminat[ing] extremes of partiality on both sides,' *ibid.*, thereby 'assuring the selection of a qualified *and unbiased* jury,' *Batson*, 476 U.S. at 91, 106 S. Ct. at 1720."

*United States v. Annigoni*, 96 F.3d 1132, 1140 (9th Cir. 1996) (some alterations in original) (quoting *Holland v. Illinois*, 493 U.S. 474, 484, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990)).

It is the interplay of challenges for cause and peremptory challenges that assures the fair and impartial jury. Challenges for cause are narrowly specified by statute and court rule. In order to remove a juror for cause, a party must be able to state on the record a legally sufficient reason for the challenge. *State v. Noltie*, 116 Wn.2d 831, 840, 809 P.2d 190 (1991) (citing 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE § 202, at 331 (4th ed. 1986)). By contrast, peremptory challenges are granted to parties so that they may remove jurors the parties believe

should not serve. Our jury selection process recognizes that bias and partiality may not be so evident that these qualities can readily be demonstrated. For that reason, a party seeking to exercise a peremptory challenge is not required to give a reason for its use and may exercise the challenge without court approval. RCW 4.44.140; 14 ORLAND & TEGLAND, *supra*, § 208, at 417 (5th ed. 1996). Here, Mr. Vreen was denied the right to use a peremptory challenge to remove Juror 55 from the jury panel based upon his belief that Juror 55's background evidenced a bias for the prosecution. As a consequence, Juror 55 sat on the jury that convicted Mr. Vreen.

In this way, the case before us is distinguishable from *Martinez-Salazar*, a case cited by the State in support of its proposition that a new trial is required only if Mr. Vreen can show prejudice beyond the loss of the peremptory challenge. Before *Martinez-Salazar*, the federal circuit courts of appeals were divided on the question of whether a defendant's peremptory challenge right is impaired if the defendant is required to use a peremptory challenge to remove a potential juror whom the trial court erroneously refused to excuse for cause. After Mr. Martinez-Salazar was convicted, he based his appeal upon the well-established federal rule that the impairment or denial of the right of peremptory challenge requires an automatic reversal of the conviction. *Lewis v. United States*, 146 U.S. 370, 376, 13 S. Ct. 136, 36 L. Ed. 2d 1011 (1892). The United States Supreme Court denied the appeal, holding that there is no denial or impairment of a defendant's peremptory challenge right when the defendant chooses to use such a challenge to remove a juror who should have been excused for cause. Characterizing its decision as narrow, the court stated:

> We . . . hold that a defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause. Martinez-Salazar and his codefendant were accorded 11 peremptory

challenges, the exact number Rule 24(b) and (c) allowed in this case.

*Martinez-Salazar,* 120 S. Ct. at 782.

*Martinez-Salazar* involved the forced use of a peremptory challenge as opposed to the outright denial of a peremptory challenge. In Mr. Vreen's case, there was a denial of the right of peremptory challenge. Unlike *Martinez-Salazar,* the challenged juror sat on the jury that convicted Mr. Vreen.

■ Mr. Vreen's case is factually similar to *Annigoni.* In that case, the trial court erroneously denied Mr. Annigoni's peremptory challenge of a juror. As a consequence, the juror sat on the jury that convicted Mr. Annigoni. On appeal, the issue before the circuit court was whether the rule requiring automatic reversal for a denial or impairment of the right of peremptory challenge should be abandoned in favor of a harmless-error review. The court stated:

> It is far from certain that this error was harmless here. Juror Hom took his place on the jury, over appellant's wishes, because the district court erroneously refused to allow appellant to exercise a peremptory strike against him. To apply a harmless-error analysis omits an important consideration: the potential harm of having Juror Hom sit in judgment of the appellant.

*Annigoni,* 96 F.3d at 1145. The court concluded that the erroneous denial of a peremptory challenge requires reversal of the conviction. *Id.* at 1147.

There is another problem with the harmless-error remedy advocated by the State. As recognized by Judge Kozinski in *Annigoni,* the remedy is illusory:

> What makes this case difficult for me is that the error is not amenable to normal harmless error analysis, as we can never figure out what would have happened if one member of the jury had been struck and replaced by some other, unknown, person. Thus, we are forced to choose from two all-or-nothing rules: the error is always harmless or it is never harmless. There is no practical middle ground.

*Id.* at 1150 (Kozinski, J., dissenting). How can an appellate

court determine the degree of harm resulting from the participation of any particular juror in the jury's deliberations? There is no record of jury deliberations. Whether you place the burden upon the State (the peremptory challenge error did not affect the jury verdict) or upon the defendant (the defendant was prejudiced by the presence of a particular juror on the jury), the bearer of the burden of persuasion would likely fail.

We hold Mr. Vreen is entitled to a new trial because the court erred by denying his peremptory challenge of a juror.

Did the court err by failing to suppress evidence of Mr. Vreen's close, personal relationship with the victims and suppressing evidence of Mr. Vreen's prior statements to reporters and a defense witness's prior statements to the police?

■■ A trial court's ruling on admission of evidence is reviewed for abuse of discretion. *State v. Ortiz*, 119 Wn.2d 294, 308, 831 P.2d 1060 (1992). A court abuses its discretion when it exercises it on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). An evidentiary error is grounds for reversal only if it results in prejudice. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). An evidentiary error "is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981); *see Bourgeois*, 133 Wn.2d at 403.

The State contends that evidence of Mr. Vreen's personal relationship with his victims had no relevance to the mental state required for conviction. To be admissible, evidence must be relevant. ER 402; *State v. Luvene*, 127 Wn.2d 690, 706, 903 P.2d 960 (1995). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more probable or less probable than it would be without the evidence. ER 401; *Luvene*, 127 Wn.2d at 706. Even if relevant, however, evidence may still be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice. ER 403; *Luvene*, 127 Wn.2d at 706.

Mr. Vreen was charged with vehicular homicide under RCW 46.61.520. The information alleges he committed vehicular homicide when he "operated a motor vehicle in a reckless manner, and with disregard for the safety of others" causing the deaths of the victims. The State argues that the requisite mental state for vehicular homicide does not require any knowledge or awareness of the risk involved, only an unreasonable failure to be aware of the risk.

■ "Disregard for the safety of others" has been defined to mean " 'an aggravated kind of negligence or carelessness, *falling short of recklessness* but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term "negligence." ' " *State v. Ferguson*, 76 Wn. App. 560, 569, 886 P.2d 1164 (1995) (quoting *State v. Eike*, 72 Wn.2d 760, 765-66, 435 P.2d 680 (1967)). Some evidence of a defendant's conscious disregard of the danger to others is necessary to support a charge of vehicular homicide. *State v. Lopez*, 93 Wn. App. 619, 623, 970 P.2d 765 (1999). There is a mental element to "carelessness" or "conscious disregard." A person can choose to be careless and is less likely to be careless with a loved one in the car. Evidence of Mr. Vreen's relationship to the victims was relevant and the court did not abuse its discretion by admitting it.

The State also contends that evidence showing Mr. Vreen was willing to shift blame for the crash to his cousin, and that his cousin's mother tried to help do this, is relevant and should have been admitted. The court refused to admit this evidence finding that it was confusing and prejudicial. Admission of the evidence would have required contextual evidence to explain it which may have been confusing to the jury, especially since Mr. Vreen stipulated that he was the driver of the car. There was a rational basis for determining that the evidence's collateral prejudice would outweigh its probative value warranting exclusion under

ER 403. The State has not established that no reasonable person would have ruled as the trial court did. *In re Marriage of Nicholson*, 17 Wn. App. 110, 114, 561 P.2d 1116 (1977).

Reversed and remanded for a new trial.

SWEENEY and SCHULTHEIS, JJ., concur.

Review granted at 141 Wn.2d 1018 (2000).