998 P.2d 373 (2000)
100 Wash.App. 757
STATE of Washington, Respondent,
v.
Timothy Dalton EVANS, Appellant.
State of Washington, Respondent,
v.
Dale Steven King, Appellant.
Nos. 42959-1-I, 43516-7-I.
Court of Appeals of Washington, Division 1.
May 8, 2000.
*375 Thomas Michael Kummerow, Seattle, for Appellant Evans.
James Robert Dixon, Robert Arthur Weppner, Seattle, for Appellant King.
Erin Elizabeth Ehlert, Andrew J. Ries, King County Pros. Atty. Office, King County Pros. Atty., Seattle, for Respondent.
*374 COX, J.
Batson v. Kentucky[1] and its progeny[2] teach that the equal protection clause of the fourteenth amendment protects against invidious discrimination by the improper exercise of peremptory challenges in criminal and civil proceedings. In these two cases that we consolidate for purposes of our opinion,[3] we decide two issues of first impression in this state. First, may a trial judge raise sua sponte a Batson issue dealing with the selection of a jury? Second, did the procedure in these cases violate the requirement of Batson that a prima facie case of invidious discrimination *376 first be shown before further inquiry is permitted?
We hold that a court may raise sua sponte a Batson issue. We further hold that the trial court's procedure in these cases is impermissibly inconsistent with the rule of Batson. Accordingly, we reverse.

Evans
The State charged Timothy Evans with delivery of cocaine[4] within 1,000 feet of a school bus route stop.[5] Out of the presence of the jury and prior to voir dire, the court stated to counsel:
With regard to any members of the jury panel who are jurors of apparent color, the best I can do, you don't ask members of the jury panel to identify themselves by race or ethnicity, so we will identify jurors who appear to be jurors of color once we have the panel down here. If either of you anticipate the possibility of a peremptory challenge as to any of those jurors, you will need to make a preliminary showing to me, at side bar or outside the presence of the panel, of a race-neutral reason for such possible peremptory. And you will need to have that approved by the court in advance of exercising such a peremptory.
Counsel for Evans then asked whether the court was waiving the requirements of Batson, to which the court replied that it was not waiving anything. The court indicated that it was requiring the procedure outlined above because so few persons of apparent color appeared either in jury panels or venires. The court further indicated that it utilized the procedure in both civil and criminal cases and regardless of the race or ethnicity of the parties or witnesses.
The record shows that the use of this procedure resulted in three members of the venire being identified as "jurors of apparent color." When the time for challenges came, the judge excused one of them for cause. Another went unchallenged by either party. The judge's ruling on Evans' peremptory challenge of the third (Juror No. 2) is at issue in this appeal.
During voir dire, Juror No. 2 provided his name, the area of the city in which he lived, and his position with a well-known Seattle-based company. He also stated that his wife attends the University of Washington and that he enjoys outdoor activities. The record does not reflect any other manner in which he participated in voir dire, except that he answered affirmatively when the court asked whether anyone had been the victim of a crime.
At the time for challenges, Evans indicated that he wished to exercise a peremptory to excuse Juror No. 2. The court responded by stating that it would require a statement, on the record, of a race-neutral reason for the challenge. Counsel stated a reason, but the court rejected it, denying the peremptory challenge.
Evans appeals the judgment on the jury verdict finding him guilty as charged.

King
The State charged Dale King with unlawful possession of cocaine.[6] The court utilized essentially the same procedure for peremptory challenges as that described in Evans' case.
The composition of the 38 members of the venire in this case included five persons who were identified as "jurors of apparent color." Of that total, one venire member (Juror No. 2) was the subject of King's fifth peremptory challenge. The court's ruling on that challenge is at issue here.
During voir dire, Juror No. 2 provided his name and the city in which he lived. He also stated that he is a truck driver, that his wife is a self-employed florist, that he enjoys traveling and sports, that he previously served on a jury in a criminal matter, and that the jury reached a verdict in that case. In addition, he raised his card when the court asked the members of the venire to "hold your cards up if you...are a nondrinker or would consider yourself to be a tea totaler and/or you personally *377 feel that zero tolerance for drug use is appropriate." Juror No. 2 later engaged in the following exchange with counsel for King:
[Counsel]: I guess what I'm getting at is because of [the] magnitude of the [drug] problem, I feel that a lot of people have an attitude that we're better safe than sorry. I think it would be better locking up Mr. King just to make sure that we're dealing with the problem. I happen to think that the Constitution says you have another way of looking at things, but what do you think about that? Do you think that's a problem these days, that we're so tired of the drugs and violence, rather be safe than sorry?
Juror No. 2: I believe there's a tendency to do that.
[Counsel]: Could you overcome that tendency?
Juror No. 2: To me, my personal opinion is that the problem doesn't lie in possession. It probably lies in the dealing of the drugs and whether he was in possession to deal. We don't know, and if the charge is possession, that's a differentit would be a different charge than him selling, but I think there's a tendency to do that, to want to get rid of drugs because I believe drugs are a bad thing to society.
When King sought to exercise a peremptory challenge against Juror No. 2, the court required a statement of "race neutral or non discriminatory reasons" for the challenge. Counsel objected, stating that there was no showing of a prima facie case of purposeful discrimination under Batson. Nevertheless, the court required an explanation. Counsel for King then offered an explanation, which the court rejected.
King moved for a new trial after the jury verdict finding him guilty as charged. In that motion, he again argued that the court's ruling denying the peremptory challenge was erroneous. In denying the motion, the trial court stated in part:
Central to the purpose of the Batson case and its progeny in case law is the court's duty to protect the right of jurors to participate in the civic process and to ensure that our justice system is free from any taint of racial bias, to the extent trial courts and parties are in a position to do so.
I will reiterate and perhaps detail some of the reasons which were articulated on the record at the time of trial and take judicial notice of the following: The most recent demographic statistics available to the court are 1996 population statistics for King County, which reflect an identified minority population in King County of 18% of the entire population in the county. There are no  secondly, there are no statistics available to King County Superior Court on the precise demographic representation of minorities on our jury venire because this information is not sought by the court in any of its information forms which all members of the jury venires are required to fill out when they appear for jury service.
Thirdly, jury venires in King County are not demographically representative of jurors of color in the county, and this is based solely on the experience and observation of all of the judges in our court.
King appeals.

Sua Sponte Batson Challenge
Evans contends that a trial court may not raise sua sponte a Batson issue. We hold that, subject to the requirements of the equal protection clause, a trial court has such discretion.
By statute and court rule, a party to an action generally has the right to exercise peremptory challenges against potential jurors without giving a reason.[7] Such challenges are not a constitutional right.[8] Improperly *378 denying or impairing the right to exercise a peremptory challenge is reversible error without a showing of prejudice.[9]
The exercise of peremptory challenges is subject to procedural and substantive limitations.[10] As to substantive limitations, a peremptory challenge may not be exercised to invidiously discriminate against a person because of gender, race, or ethnicity.[11]
Generally, a party to the proceeding makes the Batson challenge. In doing so, that party must first establish a prima facie case of purposeful discrimination.[12] A prima facie case exists if two criteria are met. First, the challenge must be exercised against a member of a "constitutionally cognizable" group.[13] Second, that fact and "other relevant circumstances" must raise the inference that the challenge was based upon membership in the group.[14] "Relevant circumstances" may include a pattern of strikes against members of the group or the particular questions asked during voir dire.[15]
Once a prima facie case is shown to exist, the burden shifts to the party exercising the peremptory challenge to give a neutral explanation related to the particular case to be tried.[16] A general denial of discriminatory intent is insufficient for these purposes.[17]
The third and final step requires the trial court to consider the proffered explanation to determine whether there is a discriminatory purpose behind the exercise of the peremptory challenge.[18] Because this step in the analysis rests on demeanor and credibility, we give great deference to the trial court's determination.[19]
The threshold issue here is whether a trial court, as opposed to a party, may raise sua sponte a Batson issue. No published Washington case addresses the issue.
The trial judge here correctly observed that the purpose of the Batson case and its progeny is to protect the rights of jurors to participate in our judicial system free from the taint of invidious discrimination. This principle applies with equal force to defendants in criminal cases and other litigants. Courts considering the question have recognized that a trial judge has a unique responsibility to ensure that these rights are protected in our judicial system.
In Lemley v. State,[20] the Alabama Court of Criminal Appeals held that a trial judge is authorized to conduct a Batson hearing, even in the absence of an objection by a party. The court stated its rationale as follows:
"[B]ecause racial discrimination in the selection of jurors `casts doubt on the integrity of the judicial process,' Rose v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979), and places the fairness of a criminal proceeding in doubt," Powers v. Ohio, [499] U.S. at [411], 111 S.Ct. at 1371, the trial judge, as the presiding officer of the court, should take the *379 necessary steps to ensure that discrimination will not mar the proceedings in his courtroom.[21]
Quoting from Powers v. Ohio,[22] the court also said:
"Active discrimination ... during [the jury selection] process condones violations of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law. The cynicism may be aggravated if race is implicated in the trial,... as with an alleged racial motivation of the defendant or a victim."[23]
Addressing the same issue in Maryland, the Maryland Court of Special Appeals also held that a trial court may, in the exercise of its discretion, raise a Batson challenge sua sponte.[24] In the words of that court, "A trial judge need not sit idly by when he or she observes what he perceives to be racial discrimination in the exercise of peremptory challenges. He is clearly entitled to intervene."[25]
And in People v. Whaley,[26] one of the judges of an appellate court in Illinois noted:
[T]he appearance of justice is not fulfilled if the trial court acquiesces in, condones or fails to preclude attempts by the prosecuting attorney to exclude blacks from the jury solely because they are black. The trial court cannot sit idly by in such instances and become an accomplice to racial discrimination in the courtroom. Rather, it must insure that justice prevails and that the appearance of justice is demonstrated in the trial that is taking place before those in attendance.[27]
In his concurring opinion in Batson, Justice Marshall observed that there was evidence that the peremptory challenge had been used for years to invidiously discriminate against potential jurors because of their race.[28] Judge A. Leon Higginbotham observed years after Batson that a series of cases following that seminal case illustrated that this form of racial discrimination remains problematic in the jury system.[29] And statistical data suggests that the use of the peremptory challenge for invidious, discriminatory purposes remains.[30]
The observations of these two jurists and the statistical data suggest that the problem that Batson was intended to address has not been eliminated. But whether or not one agrees with these observations, judges still have the responsibility to ensure that the proceedings over which they preside are fair, both in actuality and in perception. As the Alabama court said, to permit invidious discrimination during jury selection is to permit violation of one of the most basic laws, the Constitution, in the very institution entrusted to enforce the law.
Accordingly, when a trial judge presides over a trial where the peremptory challenge is being used in an invidiously discriminatory way, that judge may, in his or her discretion, act to protect the rights secured by the equal protection clause by raising a Batson issue. Failure to act in such a situation runs the substantial risk of casting doubt on the fairness of the judicial process. Taking appropriate *380 action in such a situation promotes respect for the law. And taking such action is consistent with a court's considerable discretion in conducting judicial proceedings in a way that is fair to all.[31] In short, a judge need not sit idly by while the right to participate in our judicial system, free of bias, is infringed by the discriminatory use of peremptory challenges.
None of the cases on which Evans relies support his position that a court may not raise sua sponte a Batson issue.
In Williams v. State,[32] the Indiana Supreme Court reviewed a trial judge's blanket policy requiring both the defense and the prosecution to state neutral reasons for every peremptory challenge. But the question there was whether a trial court may sua sponte raise a Batson issue without first establishing a prima facie case of discrimination. That court held that a trial judge may raise a sua sponte Batson issue as long as the first Batson requirementa prima facie showing of discriminationis met.[33]
Likewise, Pfister v. State[34] stands only for the proposition that a trial court may not require a party exercising a peremptory challenge to state a neutral reason for the challenge unless a prima facie case of discrimination exists. That court did not hold that a trial court may never raise a Batson issue on its own initiative.
And Doe v. Burnham[35] is not contrary to our holding. There, the court reversed a civil judgment in favor of Burnham on the basis of an erroneous jury instruction. In dicta, the court briefly addressed the trial court's "unusual procedure for allowing peremptory challenges of black jurors."[36] While noting that it knew of no authority allowing a judge to invoke Batson absent an objection by the opposing party, the court nevertheless indicated that a judge "should invade a party's discretion to strike potential jurors only in narrow circumstances."[37] Thus, even based on this dictum, the Seventh Circuit does not totally bar a trial judge from raising sua sponte a Batson issue.
In short, a trial court, in the sound exercise of its discretion, may raise a Batson issue sua sponte.

Prima Facie Case
We turn now to the related question of whether the procedure used to deal with peremptory challenges in these two cases was proper. Because no prima facie case of purposeful discrimination existed in either case, the trial court erred by requiring a statement of race-neutral reasons for the challenges.
The Supreme Court has done little to articulate beyond Batson how one makes out a prima facie case of purposeful discrimination, the first part of the three-part analysis. But it has made quite clear that it is improper to collapse its stated test to something less than the three-step process outlined in Batson.[38]
As we observed in State v. Wright,[39] the trial court "should not elicit the prosecutor's race-neutral explanation before determining whether the defense has established a prima facie case. To do so would collapse the Batson two-part [prima facie] analysis." Thus, if no prima facie case exists, the proponent of the strike is not required to offer a neutral explanation.[40]
*381 The first part of the prima facie case test articulated in Batson is not at issue here: the juror that the defendant in each case sought to remove is apparently a member of a cognizable racial group. The dispute here is over the second criterion: whether the presence of the first element and any "other relevant circumstances" raise an inference that the strike "was based on the status of the venire-person as a member of that [constitutionally cognizable] group."[41]
As we articulated in Wright, courts have refined the concept of "other relevant circumstances." Among them are:
1. Striking a group of jurors that are "otherwise `as heterogeneous as the community as a whole,' sharing race as their only common characteristic".
2. Disproportionate use of strikes against a group.
3. The level of a group's representation in the venire as compared to the jury.
4. Race of the defendant and the victim.
5. Past conduct of the state's attorney in using peremptory challenges to excuse all African-Americans from the jury venire.
6. Type and manner of the state's questions and statements during venire.
7. Disparate impact, all or most of the challenges used to remove minorities from jury.
8. Similarities between those individuals who remain on the jury and those who have been struck.[42]
As to Evans, the trial judge's ruling that a reason be given for a peremptory strike against a person of color is not sustainable on this record.
While a court may, in its discretion, raise sua sponte a Batson issues, it may do so only if a prima facie case of discrimination exists. Here, the court's directive was erroneously premised on the view that the mere challenge to a person of color constituted a prima facie case. That approach impermissibly collapsed the required three-part test into two parts by prematurely requiring the proponent of the challenge to state a race-neutral reason for the strike.
Looking beyond this error, the record before us shows that the voir dire did not support a determination that a prima facie case existed. We are reluctant, as other courts have been, to view the exercise of a peremptory challenge against a person of color, without more, as sufficient to establish a prima facie case.[43] For example, in Roche, the Appeals Court of Massachusetts found no prima facie showing of purposeful discrimination when Roche challenged a single black juror. The court reasoned:
While a challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety, such a peremptory challenge does not, by itself, constitute a prima facie showing of impropriety in all circumstances.[44]
And even in Lemley, where the defendant used seven of his ten peremptory challenges to excuse African-American members of the panel, numbers alone were insufficient to establish a prima facie case of purposeful discrimination. In holding that the trial court properly denied the peremptory challenges, the court of appeals relied on other relevant circumstances of the case:
By requiring the defense to come forward with reasons for its strikes of black venire members, the circuit court implicitly found a prima facie case of racial discrimination. That finding was warranted considering the implications present in the record that this offense had racial overtones *382 and the number of blacks struck by the defense.[45]
Here, even if we were to assume that the court below impliedly found a prima facie case of purposeful discrimination by Evans, the record is devoid of any explanation by the court of the reasons why such a case existed. Neither the court nor counsel considered, on the record, any of the nonexclusive factors articulated in Wright and set forth previously in this opinion. And our review of the record reveals that Juror No. 2's answers to questions did not suggest an inference of discrimination by Evans in attempting to remove that juror. Thus, neither the controlling case law nor this record supports a determination that a prima facie case of purposeful discrimination by Evans existed.
As to King, we reach the same result for largely the same reasons. The record shows nothing to support the conclusion that a prima facie case existed.
The trial judge considered an additional factordemographic statistics of people of color in King Countyto support its ruling. The court essentially concluded that persons of color are underrepresented in the venires and jury panels in King County in relation to their proportions in the county's general population. Among the venire of 38 at King's trial, there were five persons of apparent color. One of those five was the subject of the challenge. But nothing in this record, including the trial court's statements, shows that these facts are "other relevant circumstances" of purposeful discrimination by King.
We hasten to add that under appropriate circumstances, these facts might be part of a showing to fulfill the requirements of the law. But there are no other facts here to meet the test set out by the courts.
Citing Luvene,[46] and the Indiana Supreme Court's decision in Williams,[47] the State argues that a prima facie showing is no longer strictly required to raise a Batson issue. We disagree.
First, Luvene has no application here. That case involved a party volunteering a neutral reason for the peremptory challenge before a Batson challenge was raised. In neither case before us did the proponent of the strike volunteer a reason for the strike. Rather, the court required each to give a reason.
Likewise, Williams is inapposite. There, the Indiana Supreme Court reviewed a trial court practice similar to the one used in both cases here. The court disapproved of the future use of a standard practice of requiring neutral explanations for a peremptory challenge before establishing a prima facie case of purposeful discrimination. The court stated:
[W]e conclude that absent extraordinary circumstances a trial court should not require each side to present a race-neutral justification for each of its peremptory challenges.... Intervention sua sponte is only authorized when a prima facie case is abundantly clear with respect to a particular juror. Obviously, a judge who adopts a blanket policy of demanding explanations, as the court did here, would not have articulated a particularized showing and would commit error.[48]
Because that court generally banned the procedure and did not define "extraordinary circumstances," the case is of little or no use to the State here.
In our independent research we have found one other case addressing a peremptory challenge practice similar to the one at issue in Williams. In State v. Antwine,[49] the Missouri Supreme Court directed trial judges in that state "to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory *383 use of peremptory challenges." Nearly five years after deciding Antwine, the court acknowledged that the Antwine procedure "has proven confusing and difficult to apply."[50] Nonetheless, the court reaffirmed the continued directive to its courts to collapse the first two Batson inquiriesthe prima facie case of purposeful discrimination and the neutral reasons for the challenge into a single inquiry.[51]
The Antwine approach is inconsistent with our precedent, the case authority from the Supreme Court, and the overwhelming authority in other states that have considered the question.[52] We decline to adopt it.
Because there was no prima facie showing of purposeful discrimination in either of these cases, the trial court erred by inquiring further and requiring explanations of the strikes.
The final issue before us is the remedy. The State argues that the practice in question here did not prejudice the defense. It contends that because the policy applied equally to the prosecution and only to jurors of "apparent color" rather than all jurors, the policy is fair. Whether the practice is fair is not the relevant question.
Any impairment of a party's right to exercise a peremptory challenge constitutes reversible error without a showing of prejudice.[53] As such, harmless error analysis does not apply.
In Annigoni, the Ninth Circuit rejected the government's invitation to substitute a harmless error analysis for the "long-standing remedy of automatic reversal."[54] The court explained the rationale for its holding:
To apply harmless-error analysis [to the denial of a peremptory challenge] would be to misapprehend the very nature of peremptory challenges. The peremptory challenge is used precisely when there is no identifiable basis on which to challenge a particular juror for cause. By its very nature, the peremptory challenge is a tool that may be wielded in a highly subjective and seemingly arbitrary fashion, based upon mere impressions and hunches. Although a litigant may suspect that a potential juror harbors an unarticulated bias or hostility, that litigant would be unable to demonstrate that bias or hostility to an appellate court reviewing for harmless error. Similarly, the government would be hard-pressed to bear its burden of proving that the seating of a peremptorily challenged juror did not harm the defendant.... It would be difficult if not impossible for a reviewing court to determine the degree of harm resulting from erroneously allowing a juror to sit despite an attempted peremptory challenge.[55]
We note that Division Three of this court recently adopted the rationale of the Annigoni court in declining to apply harmless error analysis to the impairment of the right of peremptory challenge.[56] We agree with the court in Vreen and decline to abandon the traditional remedy, automatic reversal of the conviction, in favor of a harmless error analysis.

Summary
To summarize, we hold that a court may, in the sound exercise of its discretion, raise sua sponte a Batson issue. But it may do so only when a prima facie case of purposeful discrimination exists.
A court may not collapse the three-part Batson test into something less. The procedure *384 here did that by requiring an explanation before first determining, on the record, that a prima facie case existed.
Even if we looked past the court's error here, there is nothing in the record to demonstrate the existence of a prima facie case as a result of voir dire or the use of demographics to which the court referred. This is not to say that such a case could not be made out on a proper record.
We remind courts and counsel that the better practice in the Batson process is for the court to state whether a prima facie case exists before proceeding with further inquiry and analysis.[57] And the establishment of an adequate record for purposes of review is indispensable.[58]
We reverse in both cases and remand for further proceedings.
The remainder of this opinion has no precedential value and will not be published.[59]
COLEMAN, J., and ELLINGTON, J., concur.
NOTES
[1] 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (the State's discriminatory use of peremptory challenges violates both the defendant's and the potential juror's equal protection rights).
[2] United States v. Martinez-Salazar, ___ U.S. ___, 120 S.Ct. 774, 781, 145 L.Ed.2d 792 (2000) (a peremptory challenge may not be exercised to invidiously discriminate against a person because of gender, race, or ethnicity); J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (gender discrimination in the exercise of peremptory challenges violates the equal protection clause); Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (criminal defendants prohibited from engaging in purposeful discrimination in the exercise of peremptory challenges); Powers v. Ohio, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (in the trial of a white criminal defendant, a prosecutor is prohibited from excluding African-American jurors on the basis of their race); Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (racial discrimination in a civil litigant's exercise of peremptory challenges violates the equal protection clause); and United States v. Annigoni, 96 F.3d 1132 (9th Cir.1996) (erroneous denial of peremptory challenge requires automatic reversal).
[3] RAP 3.3(b).
[4] RCW 69.50.401(a)(1)(i).
[5] RCW 69.50.435(a)(3).
[6] RCW 69.50.401(d).
[7] RCW 4.44.140 provides: "A peremptory challenge is an objection to a juror for which no reason need be given, but upon which the court shall exclude him." (Italics ours).

CrR 6.4(e)(1) provides: "Peremptory Challenges Defined. A peremptory challenge is an objection to a juror for which there is no reason given, but upon which the court shall exclude him." (Italics ours).
[8] Martinez-Salazar, 120 S.Ct. at 779; Batson, 476 U.S. at 98, 106 S.Ct. 1712; State v. Rempel, 53 Wash.App. 799, 804, 770 P.2d 1058 (1989), reversed on other grounds, 114 Wash.2d 77, 785 P.2d 1134 (1990).
[9] See Annigoni, 96 F.3d at 1136-37 (citing Harrison v. United States, 163 U.S. 140, 142, 16 S.Ct. 961, 41 L.Ed. 104 (1896); Gulf, Colorado & Santa Fe Railway Co. v. Shane, 157 U.S. 348, 351, 15 S.Ct. 641, 39 L.Ed. 727 (1895); Swain v. Alabama, 380 U.S. 202, 212, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled on other grounds by Batson, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)).
[10] See Martinez-Salazar, 120 S.Ct. at 781.
[11] Martinez-Salazar, 120 S.Ct. at 781; State v. Luvene, 127 Wash.2d 690, 699, 903 P.2d 960 (1995).
[12] Luvene, 127 Wash.2d at 699, 903 P.2d 960.
[13] State v. Rhodes, 82 Wash.App. 192, 196, 917 P.2d 149 (1996) (quoting State v. Burch, 65 Wash.App. 828, 840, 830 P.2d 357 (1992)).
[14] Rhodes, 82 Wash.App. at 196, 917 P.2d 149.
[15] Rhodes, 82 Wash.App. at 196, 917 P.2d 149.
[16] Luvene, 127 Wash.2d at 699, 903 P.2d 960.
[17] Rhodes, 82 Wash.App. at 196, 917 P.2d 149.
[18] Rhodes, 82 Wash.App. at 196, 917 P.2d 149.
[19] Burch, 65 Wash.App. at 840-41, 830 P.2d 357 (citing Hernandez v. New York, 500 U.S. 352, 368, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991)).
[20] 599 So.2d 64, 68 (Ala.Crim.App.1992).
[21] Lemley, 599 So.2d at 69.
[22] 499 U.S. at 412, 111 S.Ct. 1364.
[23] Lemley, 599 So.2d at 70.
[24] Brogden v. State, 102 Md.App. 423, 649 A.2d 1196 (1994).
[25] Brogden, 102 Md.App. 423, 649 A.2d at 1200.
[26] 184 Ill.App.3d 459, 132 Ill.Dec. 681, 540 N.E.2d 421 (1 Dist.1989).
[27] Whaley, 184 Ill.App.3d 459, 132 Ill.Dec. 681, 540 N.E.2d at 428 (Rizzi, J. specially concurring) (quoting People v. Andrews, 172 Ill.App.3d 394, 122 Ill.Dec. 369, 526 N.E.2d 628 (1 Dist.1988)).
[28] Batson, 476 U.S. at 103-04, 106 S.Ct. 1712 (Marshall, J., concurring) (citing Swain, 380 U.S. at 231-38, 85 S.Ct. 824 (Goldberg, J., dissenting); Kuhn, Jury Discrimination: The Next Phase, 41 S. CAL. L.REV. 235 (1968); J. Van Dyke, Jury Selection Procedures: Our Uncertain Commitment to Representative Panels, 155-57 (1977)).
[29] United States v. Clemmons, 892 F.2d 1153, 1159 (3rd Cir.1989) (Higginbotham, J., concurring), cert. denied, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990).
[30] Jeffrey S. Brand, The Supreme Court, Equal Protection, and Jury Selection: Denying that Race Still Matters, 1994 WIS. L.REV. 511, 605 (1994).
[31] See, e.g., State v. Hawkins, 72 Wash.2d 565, 568-69, 434 P.2d 584 (1967) (holding that trial court has inherent power to hear an untimely motion or order a new trial sua sponte); State v. Johnston, 84 Wash.2d 572, 577, 527 P.2d 1310 (1974) (holding that trial court may sua sponte conduct a formal evidentiary hearing regarding the defendant's competency to go to trial).
[32] 669 N.E.2d 1372 (Ind.1996), cert. denied by Williams v. Indiana, 520 U.S. 1232, 117 S.Ct. 1828, 137 L.Ed.2d 1034 (1997).
[33] Williams, 669 N.E.2d at 1379.
[34] 650 N.E.2d 1198 (Ind.App. 5 Dist.1995).
[35] 6 F.3d 476 (7th Cir.1993).
[36] Burnham, 6 F.3d at 481.
[37] Burnham, 6 F.3d at 481.
[38] Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
[39] 78 Wash.App. 93, 100, 896 P.2d 713, review denied, 127 Wash.2d 1024, 904 P.2d 1157 (1995).
[40] Wright, 78 Wash.App. at 100-101, 896 P.2d 713.
[41] Rhodes, 82 Wash.App. at 196, 917 P.2d 149.
[42] Wright, 78 Wash.App. at 99-100, 896 P.2d 713 (internal citations omitted).
[43] See, e.g., Rhodes, 82 Wash.App. at 201, 917 P.2d 149; State v. Ashcraft, 71 Wash.App. 444, 459, 859 P.2d 60 (1993); Commonwealth v. Roche, 44 Mass.App.Ct. 372, 691 N.E.2d 946 (1998); Clarke v. Kmart Corp., 220 Mich.App. 381, 559 N.W.2d 377, 378 (1996); Lemley, 599 So.2d at 70-71.
[44] Roche, 44 Mass.App.Ct. 372, 691 N.E.2d at 951.
[45] Lemley, 599 So.2d at 70-71.
[46] 127 Wash.2d at 699, 903 P.2d 960.
[47] 669 N.E.2d 1372.
[48] Williams, 669 N.E.2d at 1382 (italics ours); see also Currin v. State, 669 N.E.2d 976, 979-80 (Ind.1996).
[49] 743 S.W.2d 51, 64 (Mo.1987), cert. denied by, Antwine v. Missouri, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).
[50] State v. Parker, 836 S.W.2d 930, 938 (Mo. 1992), cert. denied by, Missouri v. Parker, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992).
[51] Parker, 836 S.W.2d at 939.
[52] See also State v. Goode, 107 N.M. 298, 756 P.2d 578 (Ct.App.1988) (rejecting the Antwine approach and stating that "analysis of the state's justifications is properly left exclusively for the second stage of the [Batson] process)," cert. denied, 107 N.M. 308, 756 P.2d 1203 (1988).
[53] Annigoni, 96 F.3d at 1136-37.
[54] Annigoni, 96 F.3d at 1142.
[55] Annigoni, 96 F.3d at 1144-45 (internal citation omitted).
[56] State v. Vreen, 99 Wash.App. 662, 670-71, 994 P.2d 905, 910 (2000).
[57] William C. Slusser, David Hricik, Matthew P. Eastus, Batson, J.E.B., and Purkett: A Step-By-Step-By-Step Guide to Making and Challenging Peremptory Challenges in Federal Court, 37 S. TEX. L.REV. 127, 135-38 (1996).
[58] Slusser, 37 S. TEX. L.REV. at 137-41.
[59] RCW 2.06.040.