[No. 17779-3-III. Division Three. January 11, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. MANUEL L. BELIZ, *Appellant*.

*Manuel L. Beliz*, pro se.
*Dennis W. Morgan*, for appellant.
*Gary J. Brueher, Prosecuting Attorney, Randy J. Flyckt, Deputy*, and *Leslie K. Magryta, Special Deputy*, for respondent.

BROWN, A.C.J. — After guilty verdicts, conviction, and sentencing for two counts of first degree child rape and two counts of first degree child molestation, Manuel Beliz filed this appeal. He contests the trial court's (A) decision to order lesser sanctions rather than dismiss for prosecutorial misconduct (we disagree), and (B) failure to grant a mistrial for discriminatory peremptory jury challenges (we agree). Accordingly, we reverse and remand for a new trial.

## FACTS

The alleged events occurring in 1983 and 1990 in Adams County are largely irrelevant to our appeal issues. The

alleged victim was at the time a minor. By the time sex abuse charges were brought in April 1997, the victim had become an adult struggling with painful memories. After arraignment, Mr. Beliz was released pending trial. In July 1997, an amended information was filed charging three counts of rape of a child in the first degree (RCW 9A.44.073) and three counts of first degree child molestation (RCW 9A.44.083). About this time, Mr. Beliz retained Dennis W. Morgan as defense counsel.

Recovered memory syndrome became a concern for both sides in July 1997. Elizabeth F. Loftus, Ph.D. was an agreed expert to determine if repressed memory would be an issue at trial; she was appointed as the court's expert. Both sides had equal access to Dr. Loftus, but reserved the right to retain other experts depending on her opinion. The court order authorized payment of Dr. Loftus's retainer by the county auditor. In August 1997, a deputy prosecutor sent a copy of the order to Dr. Loftus and promised to have her retainer processed for payment. It was not processed. Dr. Loftus did not get paid. She did not send a report. The trial court later blamed the State for not getting the report.

Mr. Beliz eventually entered four speedy trial waivers while waiting for the expert's report; a succession of prosecutors said it was coming. The last waiver extended to June 30, 1998. Finally, Mr. Beliz decided he could not wait for Dr. Loftus's report and refused another continuance. Mr. Beliz was then unaware Dr. Loftus's retainer fee had not been processed through the auditor's office by the State.

Four persons from the prosecuting attorney's office handled this case, three deputies and the prosecutor. In the end, a special deputy tried the case beginning July 29, 1998. Gayle M. Petrusic was the first deputy prosecutor; she resigned by June 24, 1997. Next was Dennis DeFelice; he left sometime in August 1997. Irene K. Asai followed; she left before June 1998. After David M. Sandhaus, the prosecuting attorney then took over, he appointed Dennis R. Scott a special deputy prosecutor to handle the trial.

Ms. Petrusic agreed with Mr. Morgan not to call certain

potential witnesses due to privilege and First Amendment religious reasons. Nonetheless, just before trial, Mr. Scott subpoenaed them. They were not on the State's earlier witness list. An unexpected expert was also identified to Mr. Beliz at the same time. In response Mr. Beliz filed a Motion in Limine, a Motion to Exclude Testimony, a motion under CrR 8.3(b) to dismiss, a CR 11 motion, and finally, a challenge to Mr. Scott's appointment based on procedural grounds. As a result, the court granted nearly all the Motion in Limine, imposed severe sanctions under CrR 8.3(b)/CrR 4.7(h)(7), and declared Mr. Scott's appointment void. Over Mr. Beliz's objection, Mr. Scott was reappointed on June 29, 1998, just prior to jury selection and served as trial counsel for the State.

During jury selection, Mr. Beliz unsuccessfully challenged the State's peremptory challenges as racially motivated under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). When resisting the challenge, Mr. Scott indicated his challenges were generally not made to exclude Hispanics but rather to exclude women.

At trial, the court dismissed two counts. Mr. Beliz was found guilty of the remaining four counts, two first degree child rapes and two first degree child molestations. After conviction and sentencing, Mr. Beliz filed this appeal.

## ISSUES

The dispositive issues are (A) whether the trial court erred by abusing its discretion when denying Mr. Beliz's dismissal motion and ordering less severe sanctions based upon prosecutorial misconduct; and (B) whether the trial court should have granted Mr. Beliz's *Batson* objection based upon the State's alleged discriminatory exercise of peremptory challenges. Thus, other issues relating to the validity of the special deputy's appointment, cumulative error, and Mr. Beliz's pro se issues of juror misconduct and ineffective counsel will not be discussed.

## ANALYSIS

### A. Prosecutorial Misconduct

 We review an order denying a motion to dismiss for manifest abuse of discretion. *State v. Gary J.E.*, 99 Wn. App. 258, 261, 991 P.2d 1220, *review denied*, 141 Wn.2d 1020 (2000). Dismissal of criminal prosecution due to arbitrary action or governmental misconduct is an extraordinary remedy that is warranted only if a defendant can show prejudice. *City of Seattle v. Knutson*, 62 Wn. App. 31, 813 P.2d 124 (1991).

 Mr. Beliz first contends his speedy trial right was prejudiced due to the State's conduct regarding Dr. Loftus's report. Mr. Beliz was arraigned on May 5, 1997. His trial did not commence until June 29, 1998. Mr. DeFelice received Dr. Loftus's billing and promised to get it paid, but that was not done. Mr. Beliz argues fraud, but merely shows negligence. Although not assigning error to any speedy trial ruling, he cites *State v. Ralph G.*, 90 Wn. App. 16, 20-21, 950 P.2d 971 (1998). *Ralph G.* is a "Hobson's Choice" case, inapplicable here. Mr. Beliz did refer to speedy trial as an issue. We infer from his brief that the speedy trial issue relates to prosecutorial misconduct. Moreover, Mr. Beliz signed valid waivers of his speedy trial rights each time a continuance was sought. Nevertheless, we consider the State's negligent mismanagement due to the succession of prosecutors as proper for the trial court to consider when deciding sanctions.

Next, Mr. Beliz argues the trial court did not give enough weight to the State's late disclosure of witnesses in conflict with an earlier deputy's agreement, the undisclosed expert, and delay in receiving a videotape when deciding on lesser sanctions. While the record supports the trial court's decisions that misconduct occurred, the court decided after careful reasoning that, although close, lesser sanctions were proper. The trial court imposed fairly severe sanctions against the State. First, it excluded the State's tardily

disclosed expert. Second, it did not allow any previously undisclosed testimony. Third, it excluded any evidence discovered by the State after a stated time. Finally, it warned the State that any attempt to introduce excluded evidence would likely result in dismissal. In light of the strict standard for review, we cannot say the court abused its discretion.

■■ Last, during trial the State asked Othello Police Officer David Rehaume three successive questions calling for comments on Mr. Beliz's veracity and credibility. Defense counsel successfully objected to each question. A discussion regarding the questions and objections was held off the record; therefore it is unclear whether dismissal was requested at that time. The court in *State v. Jerrels*, 83 Wn. App. 503, 508, 925 P.2d 209 (1996), concluded that the State commits misconduct when its cross-examination seeks to compel a witness's opinion regarding the veracity of another witness. In *Jerrels*, the defendant's wife was asked whether she believed her children were telling the truth when they reported sex abuse by their father. Here, although the State violated the order in limine prohibiting it from asking questions relating to the veracity of any witness, because the discussion was off record, we do not know if dismissal was requested.

In sum, we conclude the trial court did not abuse its discretion when ruling on the pretrial motion for dismissal for prosecutorial misconduct. Given that the trial objections were sustained before any answer and that the record discloses no request for dismissal, we decline to conclude that the isolated questions alone merit dismissal.

## B. Discriminatory Peremptory Challenges

■■ Under *Batson* and its progeny[1] discriminatory challenges against a member of a protected class are

---

[1] *United States v. Martinez-Salazar*, 528 U.S. 304, 120 S. Ct. 774, 781, 145 L. Ed. 2d 792 (2000) (a peremptory challenge may not be exercised to invidiously discriminate against a person because of gender, race, or ethnicity); and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) (gender

prohibited by the equal protection clause of the Fourteenth Amendment. *State v. Evans*, 100 Wn. App. 757, 759, 998 P.2d 373 (2000). It is the court's duty to protect the right of jurors to participate in the civic process and to ensure that our justice system is free from any taint of bias. *Id.* at 762.

██ We apply the three-part test developed in *Batson*. First, the defendant must establish a prima facie case of purposeful discrimination. A defendant meets this burden if he or she establishes peremptory challenges were exercised against a member of a protected class; and if so, when taken together with other relevant circumstances, an inference can be raised indicating the challenge was based on membership in the class. *State v. Rhodes*, 82 Wn. App. 192, 196, 917 P.2d 149 (1996). Relevant circumstances may include multiple strikes against a particular racial group or suspect questions asked during voir dire. *Id.*; *State v. Wright*, 78 Wn. App. 93, 99-100, 896 P.2d 713 (1995) (listing other relevant circumstances). Second, if this prima facie showing is made, the burden shifts to the one making the challenge to articulate a race-neutral explanation for each challenge. *Rhodes*, 82 Wn. App. at 196. Third, the trial court must then determine whether purposeful discrimination in fact occurred. The court's ruling may depend partly on a juror's demeanor and credibility, matters peculiarly within the trial court's province and entitled to great deference. *Id.* at 196-97. We will not reverse the trial court's determination unless it is clearly erroneous. *Id.* at 197.

██ Here, the 36 members of the jury venire included seven possible Hispanics. Of the four examined, the State struck three (one is conceded race-neutral), the defense struck one. The burden then shifted to the State to provide a race-neutral explanation after the *Batson* objection. An off-the-record discussion about the challenges occurred with the parties then attempting to recreate the discussion for the record. As the State attempted to give its race-neutral reason for striking the jurors, it revealed it was

discrimination in the exercise of peremptory challenges violates the equal protection clause).

attempting to exclude women based upon certain gender stereotypes and to counteract what it perceived to be defense exclusion of males. The State admitted it was looking for a predominately older male jury. Neither the defense nor the court noted the State's obvious gender bias. The trial court solely decided to believe the challenges were not based upon race.

Although Mr. Beliz did not raise the gender bias issue in the trial court, because this issue affects a constitutional right, it may be addressed for the first time on appeal. RAP 2.5(a). Further, the court in *State v. Burch*, 65 Wn. App. 828, 837, 830 P.2d 357 (1992), decided a male criminal defendant has standing to raise an equal protection bias claim based on the State's peremptory challenges, even though he is not a member of the protected class. Division One reversed Mr. Burch's conviction and remanded for a new trial based on the State's gender bias in jury selection. *Burch* is strikingly similar to our case and is persuasive. Moreover, in light of a trial court's duty noted in *Evans* to intercede upon facts indicating improper discriminatory challenges, we conclude the gender bias exhibited by the State merits reversal under the principles established in *Batson* and the case law discussed here.

## CONCLUSION

We hold the trial court did not abuse its discretion when denying dismissal based upon the prosecutorial misconduct evidenced in this record and deciding lesser sanctions were merited. However, the trial court should have interceded when made aware of the State's gender bias and preemptory challenges; they were demonstrably biased against women. Because these issues are dispositive, we do not address other issues.

Reversed and remanded for a new trial.

KATO, J., and EITZEN, J. Pro Tem., concur.