# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58795-5-II |
| Respondent, | (Consolidated with No. 58801-3-II) |
| v. | |
| BRETT LEE MCCORD | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – Brett McCord appeals his convictions of two counts of first degree voyeurism. He also appeals the subsequent revocation of his special sex offender sentencing alternative (SSOSA) and multiple sentencing conditions imposed in both his voyeurism and SSOSA revocation sentences.

During jury selection, the State used all five of its peremptory challenges against male jurors. McCord raised a *Batson*[1] challenge, arguing that the State improperly used peremptory challenges to strike a disproportionate number of men from the jury panel. The trial court denied the motion, finding that McCord failed to establish a prima facie case of gender-based discrimination. For his sentencing and SSOSA revocation hearing, McCord appeared in an in-court holding cell in the Cowlitz County jail courtroom.

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

We hold that (1) the trial court erred in finding that McCord did not make a prima facie showing of gender discrimination, and we conclude that the proper remedy is remand for a new trial on the voyeurism charges; (2) we decline to consider McCord's argument that the SSOSA revocation hearing was tainted by his appearance in an in-court holding cell because he did not object in the trial court and the claim does not involve a manifest error; (3) we reject McCord's suggestion that the SSOSA revocation must be reversed pending the voyeurism trial; and (4) the community custody condition in the SSOSA revocation order that McCord pay supervision fees must be stricken.

Accordingly, we reverse McCord's first degree voyeurism convictions and remand for a new trial. We affirm the revocation of McCord's SSOSA sentence, but we remand for the trial court to strike the community custody condition that McCord pay supervision fees.

FACTS

*Background*

In May 2017, McCord pleaded guilty to four counts of indecent liberties, four counts of first degree possessing depictions of minors engaged in sexually explicit conduct, and six counts of voyeurism. The trial court imposed a SSOSA for the offenses. The court sentenced McCord to 104 months in confinement with all but 12 months suspended in lieu of community custody and five years of treatment.

In June 2022, the State charged McCord with two counts of first degree voyeurism based on McCord's placement of a video camera under the desks of two of his female coworkers. McCord admitted placing the cameras and stated that he wanted to record the women to satisfy his sexual desires.

The State then moved to revoke McCord's SSOSA based on four violations:

2

Violation 1: Mr. McCord failed to obey all laws by committing voyeurism on or about 05/26/22 in Cowlitz County, contrary to RCW 9A.44.115.

Violation 2: Mr. McCord accessed the Internet, without Community Corrections Officer permission, by controlling a video camera with removable sim card, by an application on a smartphone on or about 05/26/2017.[2]

Violation 3: Mr. McCord failed to abide by a DOC written directive of 6/23/21 by failing to notify DOC of the possession of a video camera with a removable sim card.

Violation 4: Mr. McCord possessed or used sexual stimulus material on or about 6/23/21.

Clerk's Papers (CP) at 46-49. The trial court agreed to trail the SSOSA revocation hearing until after McCord's voyeurism proceedings.

*Jury Selection*

McCord's voyeurism trial began on August 1, 2023. During jury selection, the venire consisted of 43 people who were available for strikes. Of those prospective jurors, 29 were women and 14 (33 percent) were men.

After voir dire, the parties exercised peremptory challenges in an unrecorded sidebar. The State exercised four peremptory challenges for the 12-person jury – jurors 5, 9, 30, and 31 – and one peremptory challenge for an alternate – juror 42. All the prospective jurors that the State challenged were men. The jury as seated consisted of 10 women and two men. In addition, one woman and one man were seated as alternates.

After the jury was sworn in and the venire was dismissed, defense counsel noticed that all five of the State's peremptory strikes were against men. McCord then made a *Batson* challenge. McCord noted that only 14 out of 43 prospective jurors were men. He argued, "Given that already small percentage, the fact that we're dealing with a case where two women are victims and the State

---

[2] This date appears to be incorrect. Like violation one, this violation presumably was violated on 5/26/22, not 5/25/17.

struck five males of only males from that already small pool, I think that there is a natural inference." Report of Proceedings (RP) at 154-55. The State argued that exercising peremptory challenges against only men standing alone does not establish a prima facie case. The State also noted that its challenge to the male alternate juror resulted in another man being seated as an alternate.

The trial court began by asking if it could make a prima facie finding "based solely" on the fact that the challenges were made against only men. RP at 153. After an interjection from the prosecutor and before defense counsel had spoken, the court again asked if using challenges against only men "in and of itself," was enough for a prima facie showing. RP at 154. The court then stated, "How do I determine if it's prima facie, just the fact that the challenges were men in and of itself?" RP at 154.

McCord argued that it was not solely the fact that the State used peremptory challenges only against men that showed a prima facie case. He argued that the State's pattern of striking only men from a pool that was already under representative of men, combined with the nature of the alleged crime and the gender of the victims, led to the inference that the State was discriminatorily removing men from the jury. The State argued that the court could not infer a prima facie case of discrimination because the State had accepted multiple panels before exercising all of their peremptory strikes and there was no indication of discriminatory intent during the State's questioning. The State later argued the only evidence for a prima facie case was, "the sole fact that the State has struck five men as jurors." RP at 155.

The trial court found that McCord did not establish a prima facie case of purposeful discrimination. The court stated,

> I don't think I can make a finding, *just because the challenges were exercised against males alone*, there's been a prima facie showing of purposeful discrimination. So, I'm not going to make that finding. I think that, given the record we have, I don't think there's enough to support that. And I don't think *the fact that we have men stricken alone is enough by itself*.

4

RP at 156 (emphasis added).

*Trial and Conviction*

At trial, McCord conceded that he recorded two women without their consent for sexual gratification. He argued that the jury should not convict him because the women did not have a reasonable expectation of privacy.

The jury found McCord guilty on both counts of first degree voyeurism.

*Sentencing and SSOSA Revocation Hearing*

McCord's combined voyeurism sentencing and SSOSA revocation hearing took place in September 2023 in a courtroom in the Cowlitz County jail. During this hearing, McCord appeared in an in-court holding cell.[3] The trial court did not make an individualized inquiry into the necessity of this restraint for court security. But McCord did not object to appearing in the in-court holding cell. At the hearing, McCord provided a detailed allocution.

Regarding the SSOSA revocation, McCord admitted that he had committed the four violations but asked that his SSOSA not be revoked. The trial court revoked the SSOSA and sentenced McCord to serve the remainder of his original 104 month sentence with community custody reduced to the statutory maximum. The court entered an order modifying the SSOSA sentence, which stated that "defendant shall be sentenced as set forth in the attached sentence pages." CP at 52. The attached pages contained various community custody conditions, including that McCord "pay supervision fees as determined by DOC." CP at 55.

---

[3] Although the appellate record does not indicate that McCord appeared in an in-court holding cell, the parties stipulate on appeal that McCord appeared in an in-court holding cell.

After revoking the SSOSA, the trial court sentenced McCord on the voyeurism charges. The court sentenced McCord to 60 months in confinement on one count and 24 months on the other count, to run consecutive to each other, with 36 months of community custody.

## ANALYSIS

A.  DENIAL OF *BATSON* CHALLENGE

McCord argues the trial court erred in finding that he did not make a prima facie showing of gender discrimination to support his *Batson* challenge.  We agree.[4]

1.  Legal Principles

The United States Supreme Court held in *Batson v. Kentucky* that peremptory challenges may not be exercised on the basis of a prospective juror's race.  476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).  To do so would constitute a violation of the equal protection clause under the United States Constitution because a defendant has a constitutional "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria."  *Id.* at 85-86.

*Batson* addressed alleged racial discrimination.  *Id.* at 93-94.  Most Washington cases applying Batson also have involved claims of racially motivated juror challenges.  *E.g.*, *State v. Jefferson*, 192 Wn.2d 225, 232, 429 P.3d 467 (2018).  However, in *State v. Burch*, the court held that the traditional *Batson* analysis also applies to gender-based discrimination.  65 Wn. App. 828, 836, 830 P.2d 357 (1992); *see also State v. Brown*, 21 Wn. App. 2d 541, 551-52, 506 P.3d 1258 (2022).  In addition, the United States Supreme Court has held that discrimination in jury selection based on gender is prohibited.  *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994).

---

[4] At trial, the State argued McCord's *Batson* challenge was untimely.  Although McCord argues timeliness in his brief, the State does not contest the issue on appeal.  Because the State does not contest the issue, we assume without deciding that McCord timely raised his *Batson* challenge.

Challenges to allegedly discriminatory peremptory challenges are analyzed under the three-part test announced in *Batson*. *Jefferson*, 192 Wn.2d at 231. First, the party alleging a *Batson* violation must establish "a prima facie case that 'gives rise to an inference of discriminatory purpose.' " *Id.* at 231-32 (quoting *Batson*, 476 U.S. at 94). This requires establishing that (1) the peremptory challenge was exercised against a constitutionally protected group, and (2) additional relevant circumstances raise an inference that the peremptory challenge was based on the prospective juror's membership in that protected group. *Brown*, 21 Wn. App. 2d at 555. The trial court must consider "all relevant circumstances." *Batson*, 476 U.S. at 96. Relevant circumstances include the " 'pattern' of strikes against members of a constitutionally cognizable group," the " 'prosecutor's questions and statements during *voir dire*,' " and "whether disproportionate use of strikes is used against a specific group." *Brown*, 21 Wn. App. 2d at 555 (quoting *Batson*, 476 U.S. at 97).

Although the exact standard of proof trial courts must apply to the first step is unclear, the United States Supreme Court has held that a "more likely than not" standard is too high at the prima facie stage. *Johnson v. California*, 545 U.S. 162, 170, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005). The prima facie step only requires the opponent of the strike to produce evidence "sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id.*

The second step, if a prima facie case is made, is that the party exercising the peremptory challenge must provide an adequate, gender-neutral justification for the strike. *Jefferson*, 192 Wn.2d at 232. "The explanation must be clear and reasonably specific." *Brown*, 21 Wn. App. 2d at 556. The party must offer more than a general denial of discriminatory intent. *State v. Evans*, 100 Wn. App. 757, 764, 998 P.2d 373 (2000).

7

The traditional third step, if a neutral explanation is provided, is that the trial court must determine if the challenging party has established purposeful discrimination. *Jefferson*, 192 Wn.2d at 232. In *Jefferson*, the Supreme Court modified this step to more adequately address pervasive racial discrimination. *Id.* at 242-43, 252. The new question when race is involved is whether "an objective observer could view race as a factor in the use of the peremptory challenge." *Id.* at 252. But this modified step has not been applied to alleged gender discrimination. *See State v. Hogan*, 33 Wn. App. 2d 209, 223-24, 559 P.3d 1033 (2024).

We review a trial court's finding of prima facie *Batson* discrimination for an abuse of discretion. *City of Seattle v. Erickson*, 188 Wn.2d 721, 730, 398 P.3d 1124 (2017). An abuse of discretion occurs when a trial court decision is based on untenable reasons. *State v. Ferguson*, 25 Wn. App. 2d 727, 735, 524 P.3d 1080, *review denied,* 1 Wn.3d 1022 (2023). A discretionary decision rests on untenable reasons if the trial court applied the wrong legal standard. *Id.*

2.  Analysis

The trial court's focus was narrow, asking if it could make a prima facie finding "based solely on the fact" that the challenges were made against only men and whether using challenges against only men "in and of itself," was enough for a prima facie showing. The court's narrow focus was reflected in its ruling: "I don't think I can make a finding, just because the challenges were exercised against males alone, there's been a prima facie showing of purposeful discrimination. . . . And I don't think the fact that we have men stricken alone is enough by itself." RP at 156.

However, the law is clear that in determining whether there has been a prima facie showing of discrimination, the trial court must consider "all relevant circumstances." *Batson*,

8

476 U.S. at 96. The inquiry is not limited to the fact that only men were challenged. The trial court here failed to consider other relevant circumstances.

Four circumstances are relevant here. First, the one factor that the trial court acknowledged is that the State exercised peremptory challenges against five men and no women. Although this fact standing alone may not be sufficient to show a prima facie case of gender discrimination, it certainly is significant.

Second, a similar relevant factor is the pattern of strikes against a protected group. *Brown*, 21 Wn. App. 2d at 555. Here, the State's challenges were particularly significant because of the few men in the jury pool. There were only 14 men out of 43 prospective jurors. Yet, the State exercised peremptory challenges against five of them, or 36 percent. The State did not exercise peremptory challenges against any of the 29 women prospective jurors. There is at least an inference that the State was targeting men.

Third, a relevant factor is the prosecutor's questions during voir dire. *Id*. Nothing in the record indicates that the prosecutor asked any questions or elicited any comments from three of the prospective jurors the State challenged – jurors 5, 9, and 31. And although these jurors did speak during McCord's voir dire, the prosecutor did not ask for any more time to question those jurors after McCord completed his questioning. There is at least an inference is that the State challenged them not because of what they said, but only because they were men.

Fourth, a relevant factor is the nature of the alleged offense and the genders of the defendant and the victims. McCord was charged with taking videos of the fully clothed lower bodies of two women. There is at least an inference that women would be more offended by this conduct than men.

9

The record does not show that the trial court considered the final three of these relevant circumstances when finding that McCord had not made a prima facie case. The failure to apply the correct legal standard is itself an abuse of discretion. *Ferguson*, 25 Wn. App. 2d at 735.

In addition, the prima facie stage only requires the opponent of the strike to produce evidence "sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson*, 545 U.S. at 170. We conclude that the trial court abused its discretion in failing to find that in conjunction with the fact that all of the State's peremptory challenges were against men and none were against women, these relevant circumstances were sufficient to draw an inference that gender discrimination occurred.

The State may well have had adequate, gender-neutral justifications for the peremptory strikes against the male prospective jurors under the second step of the *Batson* analysis. But the trial court never reached that step.

We hold that the trial court erred when it denied McCord's *Batson* challenge based on its finding that he did not establish a prima facie case of gender discrimination.

3. Remedy

McCord argues that the proper remedy for the trial court's error is a remand for a new trial based on *Erickson*. We agree.

The Supreme Court in *Erickson* noted that the traditional remedy for a *Batson* error is a remand to the trial court to complete the three-part *Batson* analysis on the record. 188 Wn.2d at 735. But the court then determined that a remand for a new trial was the proper remedy in that case. *Id.* The court noted that the trial court's ruling had occurred two and half years before and stated that it would be "unreasonable to require a trial court to recall and evaluate the

10

prosecutor's demeanor and credibility after that passage of time, let alone recall and evaluate the jury." *Id.*

Here, by the time this opinion is issued, nearly two years will have passed since McCord's voyeurism trial. As in *Erickson*, it would be unreasonable to require the trial court to conduct its *Batson* analysis after this passage of time. In addition, the State does not address and therefore does not contest McCord's proposed remedy.

Accordingly, we reverse McCord's voyeurism conviction and remand for a new trial.

B.      COURT APPEARANCE IN IN-COURT HOLDING CELL

McCord argues that his appearance in an in-court holding cell for his SSOSA revocation hearing violated his due process rights. The State argues that this claim cannot be raised for the first time on appeal because the claim does not constitute a manifest error affecting a constitutional right under RAP 2.5(a)(3). We agree with the State.

1.      Applicable Law

After McCord was convicted but during this appeal, our Supreme Court decided *State v. Luthi*, 3 Wn.3d 249, 549 P.3d 712 (2024). In *Luthi*, the court addressed whether a criminal defendant could be required to appear at court proceedings from the same Cowlitz County in-court holding cell used in this case. *Id.* at 251.

In a matter of first impression, the court concluded that the in-court holding cell was a "restraint" on defendants that implicated due process protections. *Id.* at 260-61. The court emphasized that the in-court holding cell was a restraint on defendants because it "undermines the presumption of innocence, the ability to consult with counsel, and the dignity of the proceedings." *Id.* at 261. Therefore, the court held that the routine practice of requiring defendants to appear from an in-court holding cell violates due process unless the trial court

11

makes an "individualized finding that such restraint is necessary for courtroom security reasons." *Id.* at 263.

The State does not argue that McCord's appearance from the in-court holding cell was lawful under *Luthi*.

2.    Legal Principles – Manifest Error

Appellate courts may refuse to review claims of error which were not first raised in the trial court. RAP 2.5(a). Here, McCord did not object to appearing from the in-court holding cell. Therefore, he did not preserve the error. However, a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3).

There is no question that McCord's claimed error under *Luthi* is constitutional in nature. The question is whether the claimed error is manifest.

An error is manifest if the appellant shows actual prejudice. *State v. J.W.M.*, 1 Wn.3d 58, 91, 524 P.3d 596 (2023). The appellant must make a plausible showing that the claimed error had practical and identifiable consequences. *Id.* If we determine that a claim constitutes a manifest error, the claim is subject to a harmless error analysis. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

3.    Analysis

McCord has not shown how appearing in an in-court holding cell at the SSOSA revocation hearing prejudiced him or had any "practical and identifiable consequences." *J.W.M.*, 1 Wn.3d at 91. At the hearing, McCord admitted that he committed the four SSOSA violations. So there was no concern about presumption of innocence. McCord was able to participate fully in the hearing, providing a heartfelt allocution. And there is no indication that McCord needed to and was unable to speak with his attorney during the hearing.

McCord argues that his appearance in the holding cell would cause the trial court to believe that he was a danger to the community and needed to be punished harshly. But regarding the SSOSA revocation, the court was aware of McCord's multiple prior offenses – including six voyeurism convictions – and the fact that McCord's conduct leading to the two voyeurism charges were similar to some of those prior offenses. There is no evidence that McCord's appearance in the holding cell affected the trial court's decision making and speculation is not enough.

We conclude that McCord cannot show manifest error. Therefore, we decline to consider McCord's argument regarding the in-court holding cell.

C. SSOSA REVOCATION

McCord suggests that even if we do not reverse the SSOSA revocation based on his appearance in the in-court holding cell, we should vacate the revocation pending the results of the voyeurism trial. We disagree.

RCW 9.94A.670(11) states that a trial court can revoke a SSOSA if "[t]he offender violates the conditions of the suspended sentence." We review a trial court's decision to revoke a SSOSA sentence or an abuse of discretion. *State v. Miller*, 159 Wn. App. 911, 918, 247 P.3d 457 (2011).

Here, McCord admitted that he committed the four charged SSOSA violations. Violation one was that McCord failed to obey all laws by committing voyeurism. But the other three violations did not depend on a voyeurism conviction.

McCord does not argue that the trial court exceeded its authority or abused its discretion in revoking the SSOSA. Nor does McCord argue that the court would not have revoked the SSOSA even if McCord had not been convicted of voyeurism given the fact that he admitted recording two

13

women for his sexual gratification. Accordingly, we affirm the trial court's revocation of McCord's SSOSA.

D.    COMMUNITY CUSTODY CONDITIONS[5]

McCord challenges several community custody conditions in the original SSOSA judgment and sentence. But the order modifying the SSOSA stated that McCord "shall be sentenced as set forth in the attached sentence pages." CP at 52. The only community custody condition McCord challenges in the order modifying the SSOSA is the condition that he pay supervision fees.

In 2022, the legislature eliminated trial courts' ability to impose community custody supervision fees. LAWS OF 2022, ch. 29, § 7. RCW 9.94A.703, which dictates the conditions of community custody, no longer allows for the imposition of community custody supervision fees on convicted defendants. Accordingly, we hold that community custody supervision fees must be stricken from the trial court's order modifying the SSOSA.

CONCLUSION

We reverse McCord's first degree voyeurism convictions and remand for a new trial. We affirm the revocation of McCord's SSOSA sentence, but remand for the trial court to strike the community custody condition that McCord pay supervision fees.

---

[5] Because we are reversing the voyeurism convictions, we do not address the challenged community custody conditions in the voyeurism judgment and sentence.

No. 58795-5-II
(Consol. with No. 58801-3-II)

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, P.J.

We concur:

PRICE, J.

CHE, J.